O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM S. HILO, | Case No. SACV 17-00395-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff William S. Hilo ("Plaintiff") filed a Complaint on March 7, 2017, seeking review of the Commissioner's denial of his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties filed consents to proceed before the undersigned Magistrate Judge. In accordance with the Court's Order Re: Procedures in Social Security Appeal, the parties filed a Joint Submission ("Jt. Sub.") on January 31, 2018, addressing their respective positions. The Court has taken the Joint Submission under submission without oral argument and as such, this matter now is ready for decision.

# I.
# BACKGROUND

Plaintiff applied for DIB on December 12, 2013 and SID on July 18, 2014, alleging disability on April 4, 2012 in both applications. (Administrative Record ["AR"] 11, 167-77.) After his applications were denied initially (AR 84) and on reconsideration (AR 115), Plaintiff requested an administrative hearing, which was held on June 4, 2015. (AR 29-55, 128-29.) Plaintiff, represented by counsel, appeared and testified at the hearing before an Administrative Law Judge ("ALJ"). (AR 29-55.)

On July 8, 2015, the ALJ issued a written decision finding Plaintiff was not disabled. (AR 8-24.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 4 and suffered from the following severe impairments: obesity, right rotator cuff tear, lumbar spondylosis, right hip bursitis, mild degenerative changes of the left knee, and mild acromioclavicular (AC) joint degenerative disease. (AR 13.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 17.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations: Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand, walk, or sit for six hours out of an eight-hour workday; (3) occasionally push and/or pull with the right upper extremity; (4) frequently climb ramps or stairs, balance, stoop, kneel, or crouch; (5) occasionally climb ladders, ropes, or scaffolds, or crawl; (6) occasionally lift overhead with the right upper extremity up to 10 pounds occasionally and less than 10 pounds frequently; and (7) must avoid concentrated exposure to extreme cold, excessive vibration, and workplace hazards, such as moving machinery and unprotected heights. (AR 17-18.) The ALJ further found that Plaintiff was capable of performing past relevant work

as a car salesman and gas station owner/manager. (AR 23.) Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act. (AR 24.)

Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. (AR 7.) On January 17, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (AR 1-6.) This action followed.

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review a decision to deny benefits. An ALJ's findings should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). However, a court may review only the reasons stated by the ALJ

in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

Even if an ALJ errs, the decision will be upheld if the error is harmless. Molina, 674 F.3d at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

## III.

## DISCUSSION

The parties present three disputed issues (Jt. Sub. at 1-2):

Issue No. 1: Whether the ALJ erred by finding Plaintiff's mental impairment non-severe;

Issue No. 2: Whether the ALJ committed legal error in not adequately assessing Plaintiff's testimony regarding his pain and limitations; and

Issue No. 3: Whether the ALJ failed to consider the State Agency determinations.

As explained below, the Court agrees with Plaintiff, in part, and remands for further proceedings.

**A.   Step Two Finding Regarding Plaintiff's Mental Impairment**

At step two of the sequential evaluation, the ALJ determines whether the claimant has a severe, medically determinable impairment or combination of impairments that meets the durational requirement. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). In assessing severity, the ALJ must determine whether the claimant's medically determinable impairment or combinations of impairments significantly limits his ability to do basic work activities. See Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Step two is a "de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment or combination of

impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (quoting Smolen, 80 F.3d at 1290). The ALJ "may find that a claimant lacks a medically severe impairment or combination of impairments only when [that] conclusion is 'clearly established by medical evidence.'" Id. at 687 (citation omitted).

The ALJ found that Plaintiff had medically determinable mental impairments of adjustment disorder with mixed anxiety and depressed mood, post-traumatic stress disorder, schizoaffective disorder, generalized anxiety disorder, and major depressive disorder, but that those impairments, considered singly and in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and as such, were non-severe. (AR 14.) The ALJ found that Plaintiff had no more than mild limitations in the first three broad functional areas used to determine severity – activities of daily living, social functioning, and concentration, persistence, or pace – and no episodes of decompensation that have been of extended duration in the fourth area. (AR 14-15.)

Plaintiff contends that the ALJ failed to properly consider the medical opinions of workers' compensation physicians Drs. Edwin C. Peck and David R. Kauss, State Agency physicians Drs. D. Funkenstein and Robert Liss, and the opinion of treating physician, Dr. Eleni Hailemariam. (Jt. Sub. at 3-9.)

Several reports were prepared in connection with Plaintiff's claim for workers' compensation benefits. Dr. Peck conducted psychiatric evaluations in December 2012 and September 2013. (AR 481-532.) In January 2013, Dr. Peck: (a) diagnosed Plaintiff with post-traumatic stress disorder, schizoaffective disorder, and generalized anxiety disorder; (b) concluded that Plaintiff was temporarily totally disabled from April 11, 2012 to December 18, 2012; and (c) opined that it was medically probable that Plaintiff would remain temporarily

5

totally disabled until he began psychiatric treatment. (AR 524, 526.) In September, Dr. Peck diagnosed Plaintiff with a major depressive disorder, recurrent, severe, without psychotic features, generalized anxiety disorder, and somatization disorder, with prominent hypochondriacal features. Dr. Peck also noted that Plaintiff suffers from a personality prototype, "most probably with schizotypal and avoidant personality features." (AR 501.) Dr. Peck noted that Plaintiff was oriented to time, place, and person; spoke clearly; his mood was depressed; his memory was at an adequate to good level; his intelligence was slightly above average; he became more insightful as the interview progressed; he was able to manage his own funds; and did not have any plans or intentions of harming or killing himself or anyone else. (AR 497-98.)

Dr. Kauss conducted a psychological evaluation in April 2014 in connection with the workers' compensation claim. (AR 590-608.) Dr. Kauss noted that Plaintiff was well-groomed, polite, and cooperative during the evaluation; his mood was anxious with evidence of underlying depression; affect was consistent with mood and appropriate to thought content; he reported suicidal ideation, but denied plan or intent; he had some difficulty recalling dates, details, sequence of events, and medical treatment; immediate stream of thought was rational, relevant, and coherent; assessment of reality was within normal limits; insight and social judgments were within normal limits; and intelligence was in the above average range. (AR 596-97.) Results from the Epworth Sleepiness Scale suggested an abnormal level of daytime sleepiness, raising the possibility of a sleep disorder. (AR 599.) Dr. Kauss diagnosed Plaintiff with unspecified anxiety disorder with depression, male hypoactive sexual desire disorder, and noted psychological factors affecting another medical condition. (AR 600.) Plaintiff scored a 19 on the Beck Depression Inventory, consistent with a mild level of depression and his response score on the Beck Anxiety Inventory was consistent with a severe

6

level of anxiety. (AR 598.) Based on the information available to Dr. Kauss at that time, he concluded that Plaintiff was temporarily totally disabled since April 4, 2012 and continuing, except for a period of time he attempted to work for several auto dealerships. He further opined that he had not reached the point of maximal medical improvement and recommended treatment. (AR 606-07.) Although Dr. Kauss requested authorization to implement a treatment plan for Plaintiff (AR 607), there are no treatment records or evidence reflecting that the authorization was approved.

Another workers' compensation evaluation was conducted by Dr. Dmitriy Sivtsov in October 2014. (AR 611-66.) Dr. Sivtsov noted that Plaintiff was calm, cooperative, and offered good eye contact during the interview; he was somewhat guarded and abbreviated when he spoke about the injurious events outside the workers' compensation case; he described his mood as "today is not a bad day"; his affect was of full range, minimally restricted, and mostly near euthymic; his thought content was full of preoccupation with the events he perceived as harassment while working at the Honda dealership; there were no signs of major psychopathology or psychotic inclusions in his thought content; his thought process was logical and goal directed; and he was fully oriented to person, place, time, and situation. He denied having suicidal or homicidal ideation at that time. Dr. Sivtsov found Plaintiff's reliability as a historian less than satisfactory. (AR 623-24.) Results from the Beck Depression Inventory indicated the possibility of moderate depression, the results of the Beck Anxiety Disorder suggested the possibility of severe anxiety, and results from the Epworth Sleepiness Score indicated the possibility of some problems with daytime sleepiness. (AR 627-28.) Plaintiff's test responses were most consistent with the following diagnoses: depressive disorder, anxiety disorder, adjustment disorder, and somatoform disorder. (AR 628.) In summarizing Plaintiff's deposition testimony previously provided in April 2014, Dr. Sivtsov

noted that Plaintiff indicated at the deposition that he no longer suffered from depression and anxiety. (AR 648.) Dr. Sivtsov diagnosed Plaintiff with an adjustment disorder with mixed anxiety and depressed mood, chronic. (AR 650.) He noted that he was lacking any convincing evidence that there was a period of time when Plaintiff had a degree of psychopathology that would have made him totally temporarily disabled psychiatrically. (AR 656.) With respect to possible partial temporary disability, Dr. Sivtsov noted that it seemed that Plaintiff "had been subjectively affected by the events perceived as harassment and humiliation at work that had a negative effect on his relationship at home, sleep, and amplified his pre-existing gastrointestinal condition by way of wrong food choices. He was also not motivated and tearful." As such, Dr. Sivtsov concluded that there was a period of temporary partial disability psychiatrically from June or July 2011 and ending the date of the evaluation. (AR 656.) He opined that Plaintiff had reached the level of maximum medical improvement and was permanent and stationary as of the date of the evaluation. (AR 657.) He further opined that Plaintiff had mild impairment with regard to activities of daily living, no to mild impairment with regard to social functioning and concentration, and no impairment with regard to adaptation. (AR 658-60.) He recommended psychotherapy, but noted that it remained unclear whether Plaintiff was seriously interested in psychopharmacological treatments and did not recommend such treatments. (AR 663.) Dr. Sivtsov concluded by stating that Plaintiff was ready to join the workforce despite residual emotional symptoms. (AR 664.)

     Dr. Kauss completed a supplemental report in February 2015 after reviewing Dr. Sivtsov's report. (AR 668-75.) He indicated that although his diagnosis differed somewhat from Dr. Sivtsov's diagnosis, they both found that Plaintiff developed clinically significant anxiety and depression as a result of work-related stressors. (AR 674.)

The ALJ gave great weight to the opinion of Dr. Sivtsov, concluding that his opinion was consistent with Plaintiff's mental health treatment records, which showed minimal mental health treatment and several mental status examination results grossly within normal limits. (AR 16.) The ALJ gave little weight to the opinions of Drs. Peck and Kauss, and noted that they examined Plaintiff solely in the context of a workers' compensation claim, "which affects the relevance of their opinions." (AR 17.) The ALJ found their temporarily totally disabled conclusions had no probative value and their opinions were inconsistent with Plaintiff's mental health treatment records as a whole, which revealed inconsistent mental health treatment. (Id.)

Plaintiff contends that it was error to treat workers' compensation physicians with suspicion. (Jt. Sub. 3.) Plaintiff argues that the ALJ's finding that the fact that Drs. Peck and Kauss examined Plaintiff solely in the context of a workers' compensation claim affects the relevance of their opinions warrants remand because "this error undermines her entire decision making process concerning evaluation of opinion evidence." (Id.) The Court disagrees. Although an ALJ may not disregard a physician's opinion merely because it was initially elicited in a state workers' compensation proceeding, Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002), an ALJ is not bound to accept or apply a workers' compensation physician's status designation, such as temporarily totally disabled, because such terms of art are "not equivalent to Social Security disability terminology." Sanchez v. Berryhill, 2017 WL 5508515, at *5 (C.D. Cal. Nov. 16, 2017) (citation omitted); see also Booth, 181 F. Supp. 2d at 1104. Here, it is not clear that the ALJ discounted their opinions on the basis that their opinions were elicited for purposes of the workers' compensation claim, considering that the ALJ otherwise gave great weight to the opinion of Dr. Sivtsov, another workers' compensation physician. Nevertheless, the ALJ otherwise provided a specific and legitimate

reason supported by substantial evidence for giving little weight to the contradicted opinions of these examining physicians.[1] See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996) (as amended).

Here, the ALJ discounted Drs. Peck and Kauss's opinions because they were inconsistent with Plaintiff's mental health treatment records as a whole, which reflected inconsistent mental health treatment. (AR 17.) This was a proper basis for rejecting their opinions.

The only evidence of mental health treatment was for a six-month period in 2013. In June 2013, Plaintiff sought mental health treatment with the County of Orange, Behavioral Health Services. At that time, Plaintiff reported panic attacks, depression, irritable mood, anxiety, and poor concentration. (AR 567, 569.) In August 2013, Plaintiff reported that he had been depressed since losing his job and was sleeping poorly. He denied hopelessness, helplessness, and suicidal ideation intent or plan. Dr. Hailemariam prescribed Trazadone. (AR 573-74.) In September 2013, Plaintiff reported to Dr. Hailemariam that he was sleeping better and feeling less depressed since starting Trazadone. (AR 570.) However, he reported to his therapist, Zahra Heydari, that he was not happy about his medication and was feeling depressed. (AR 564.) In October 2013, he reported no significant improvement in depression or sleep and Dr. Hailemariam prescribed Celexa, in addition to Trazadone. (AR 572.) In November 2013, Plaintiff reported that he was not sleeping, but after further inquiry, he disclosed he had been taking only one Trazadone tablet. Plaintiff gave Dr. Hailemariam a form to complete so he could get permanent disability benefits. He was referred to therapist Heydari.

---

[1] The Court rejects Plaintiff's characterization of Dr. Kauss as a treating physician. (Jt. Sub. at 5.) Although he requested authorization to implement a treatment plan, there is no evidence that authorization was provided or that a treating relationship was established.

(AR 571.) Therapist Heydari indicated that Plaintiff looked calm and did not present any symptoms of depression. (AR 563.) On the same date, Heydari talked with Dr. Hailemariam, who stated that Plaintiff did not seem depressed and questioned his motivations for seeking therapy, explaining that it looked like he wanted to stay in the program so that he could get disability benefits. Heydari followed up with Plaintiff, who stated that he would get his medications from his primary care physician and would like to close his case. (AR 562.) Plaintiff's case was closed in December 2013. (AR 561.)

There is no evidence of any further mental health treatment. On this record, the ALJ reasonably concluded that Plaintiff's inconsistent mental health treatment contradicted Drs. Peck's and Kauss's opinions. See Adcock v. Berryhil, 2017 WL 2469355, at *11-12 (C.D. Cal. June 6, 2017) (ALJ reasonably concluded that plaintiff's failure to seek mental health treatment contradicted medical opinion).

Citing to Nguyen v. Chater, 100 F.3d 1462 (9th Cir. 1996), Plaintiff argues that lack of treatment is an insufficient basis for rejecting Drs. Peck's and Kauss's opinions. (Jt. Sub. at 5.) Nguyen in distinguishable. In that case, the ALJ discounted evidence of depression because the claimant failed to seek treatment for any mental disorder "until late in the day." The Ninth Circuit held that this was not a substantial basis for rejecting the medical opinion, explaining that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen, 100 F.3d at 1465 (citation omitted). Here, Plaintiff has sought treatment in the past, after Dr. Peck recommended mental health treatment (AR 495), but discontinued treatment after his treating physician suggested he was only seeking treatment for purposes of a disability claim. Although Plaintiff claimed at the hearing that the reason he discontinued treatment was because they could not do anything else for him since he was not "crippled"

11

(AR 46), the treatment notes indicate that Dr. Hailemariam opined that Plaintiff did not seem depressed and wanted to stay in the program so he could get disability benefits. (AR 561-62.) The ALJ noted that the medical records seemed to indicate that Plaintiff did not want to go to the county facility because there were a lot of homeless people, but Plaintiff stated at the hearing that "they didn't even recommend it." (AR 46.)[2] Although it is not clear whether Plaintiff is referring to the county physician regarding further treatment, all three workers' compensation physicians recommended further treatment (see AR 501 (9/16/13 recommendation from Dr. Peck that Plaintiff obtain further mental health treatment); AR 607 (5/14/14 recommendation from Dr. Kauss for mental health treatment); AR 663 (10/27/14 recommendation from Dr. Sivtsov for mental health treatment)) and Plaintiff reported to Dr. Sivtsov that the county told him that he could return if he needed. (AR 663.) Even though Plaintiff knew mental health treatment was available, he chose to ignore the physicians' advice. Plaintiff's failure to seek treatment reasonably suggests that Plaintiff's symptoms were not as debilitating as he has alleged. See Molina, 674 F.3d at 1113-14 (ALJ properly considered the failure to seek mental health treatment); Judge v. Astrue, 2010 WL 3245813, at *3-4 (C.D. Cal. Aug. 16, 2010) (the ALJ did not err in considering plaintiff's failure to seek treatment where her failure to get treatment after 1997 seemed to be more a function of the fact that she did not need it, as opposed to an inability to comprehend that she needed it). Because the ALJ's conclusion was reasonable, the Court should not disturb it. See Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)

---

[2] Plaintiff also appeared to claim during the administrative hearing that he was not currently in treatment because he did not have insurance or money (AR 47), but earlier in the hearing, he expressly testified that he had insurance. (AR 44.)

12

("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The ALJ similarly discounted the opinions of State agency medical consultants, Drs. Funkenstein and Liss. (AR 17.) Again, this finding was reasonable. Both Drs. Funkenstein and Liss diagnosed Plaintiff with an affective disorder and anxiety-related disorder. (AR 91-92, 105-06.) They found Plaintiff had understanding and memory limitations, sustained concentration and persistence limitations, no social interaction limitations, and no adaptation limitations. (AR 95-97, 110-11.) The physicians wrote "srt" in response to questions asking about the degree of specific understanding and memory limitations and sustained concentration and persistence limitations. (Id.) Plaintiff states that "srt" means "simple, repetitive tasks" (Jt. Sub. at 6), although he provides no citation for this contention. In any event, the ALJ gave little weight to these opinions because they were inconsistent with Plaintiff's mental health treatment records. The ALJ cited to the lack of recent mental health treatment and the fact that Plaintiff was not taking any medication for his mental impairment. (AR 17.) Plaintiff discontinued mental health treatment in 2013 and at the administrative hearing, Plaintiff indicated that he was not taking any medication for his mental impairment. (AR 46.) The ALJ provided a specific and legitimate basis for rejecting these opinions.

Finally, Plaintiff contends that the ALJ failed to consider the opinion and reporting of Dr. Hailemariam that Plaintiff had a Global Assessment of Functioning ("GAF") score of "50 or less." (Jt. Sub. 7.) The Commissioner has declined to endorse GAF scores, see 65 Fed. Reg. 50746-01, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in [the Commissioner's] mental disorders listings."); see also Davis v. Colvin, 2015 WL 350283, at *7 (C.D. Cal. Jan. 26, 2015) ("An ALJ has no obligation to credit or even consider GAF scores in the disability

determination."), and the most recent edition of the DSM "dropped" the GAF score, citing its conceptual lack of clarity and questionable psychometrics in practice. Diagnostic & Statistical Manual of Mental Disorders (5th ed.); see also Tate v. Frauenheim, 2017 WL 6463716, at *6 (C.D. Cal. Nov. 16, 2017) ("GAF scores have been excluded from the latest edition of DSM because of concerns about their reliability and lack of clarity"), Report and Recommendation accepted by 2017 WL 6496419 (C.D. Cal. Dec. 15, 2017). Nevertheless, the Social Security Administration "has said that GAF scores 'should be considered as medical opinion evidence under 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) if they come from an acceptable medical source.'" Wellington v. Berryhill, 878 F.3d 867, 871 n.1 (9th Cir. 2017) (citation omitted). Here, the ALJ considered and discussed Dr. Hailemariam's findings, which included the GAF scores. (AR 16-17.) Thus, the ALJ properly evaluated the medical evidence and did not err in failing to explicitly discuss the GAF scores. See Chavez v. Astrue, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009) ("an ALJ is not required to give controlling weight to a treating physician's GAF score; indeed, an ALJ's failure to mention a GAF score does not render his assessment of a claimant's RFC deficient").

In sum, the ALJ's conclusion that Plaintiff's mental impairment was not severe was supported by substantial evidence in the record.

### B. Plaintiff's Subjective Symptom Testimony

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also 20

C.F.R. §§ 404.1529, 416.929. The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (citation omitted). However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).[3]

Plaintiff completed a function report on January 10, 2014, describing depression, anxiety, sleeplessness, panic attacks, and pain in his back and shoulder. (AR 207-08.) He indicated that he only slept three to four hours per night. (AR 208.) He was able to take care of his personal care without any problems, but needed reminders, prepared his own meals once every two days, did laundry with help and encouragement, walked, drove a car, shopped, handled his own money, played chess, watched television once in a while with difficulty concentrating, spent time with others, attended church, but became agitated getting along with others. (AR 208-212.) He indicated his conditions affected his ability to reach, as well as his memory, ability to complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others. (AR 212.) He further indicated he could not lift more than 10 pounds

---

[3] After the ALJ's decision, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10.

or pay attention for more than 10 minutes, did not handle stress well, but could handle changes in routine and get along with authority figures. (AR 212-13.)

During the administrative hearing, Plaintiff testified that he believed the reason he had been unable to work since April 2012 was a "mental issue, harassment and favoritism and humiliations on daily basis[,] [h]ostile environment." (AR 35.) He tried to work after April 2012, but felt "like panicking," could not sleep at night, slept on the job one time, and was "stressed out all the time." (AR 36-37, 42.) He suffered from panic attacks once in a while, anxiety attacks almost once a month, and if he was stressed, he could not sleep. (AR 39-40.) He described feeling paranoid and insecure, but indicated that he did not have trouble interacting with others. (AR 40-41.)

Plaintiff also described physical limitations. He testified that he had a rotator cuff tear in his right shoulder, back pain, "radiation" and pain in his knees and legs, trouble with movement in his right hand, and could not stand for more than 10 minutes. (AR 38-39, 44.) He estimated that he could lift or carry 20 pounds. (AR 38.) He took pain medication every night for his shoulder, and Aspirin and Tylenol for his back, all of which helped the pain. (AR 42, 45.) He indicated that he drove every day and did light household chores. (AR 34, 41.)

The ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements "concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not credible to the extent those statements [were] inconsistent with the residual capacity assessment herein." (AR 20.) As explained below, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony.

First, the ALJ improperly discounted Plaintiff's subjective symptom testimony based on his daily activities. The ALJ noted that although Plaintiff's

activities of daily living were somewhat limited, "some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment[.]" (AR 19.) In particular, the ALJ cited to Plaintiff's ability to perform personal grooming activities, perform household chores, drive a vehicle, and shop, explaining that such activities were compatible with competitive work. (AR 19, 23.) These activities are not inconsistent with Plaintiff's testimony regarding his mental impairments, and the ALJ provides no explanation regarding how these activities undermine Plaintiff's credibility. Similarly, the ALJ's conclusory finding that some of the physical abilities required to perform Plaintiff's daily activities are the same as those necessary for obtaining and maintaining employment does not constitute a specific, clear and convincing reason supported by substantial evidence for rejecting Plaintiff's subjective symptom testimony. The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). "[O]nly if [his] level of activity [was] inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [his] credibility." Garrison, 759 F.3d at 1016. Here, the ALJ erred in relying on Plaintiff's reported daily activities without explaining how these activities were inconsistent with Plaintiff's subjective symptom complaints.

Next, the ALJ discounted Plaintiff's credibility because he attempted to go back to work on two occasions. (AR 20.) Attempting to work and failing does not undermine Plaintiff's credibility. Robinson v. Colvin, 666 F. App'x 687, 688 (9th Cir. 2016). Plaintiff explained that in 2013 he attempted to return to work as a car salesman, but stopped working after a short period of time because he was having panic attacks, could not sleep at night, and slept at work. (AR 36, 42.) If anything, Plaintiff's unsuccessful attempt to return to work supports his allegations of disabling symptoms. Lingenfelter, 504 F.3d at 1038; Robinson, 666 F. App'x at 688.

Third, the ALJ found that Plaintiff has not received the type of medical treatment one would expect for a totally disabled individual. (AR 19.) While evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment, Parra, 481 F.3d at 750-51; see also Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008), in this instance, the ALJ's finding is not supported by substantial evidence. The ALJ provided no explanation for her finding and instead, merely summarized the objective medical evidence. (AR 19-20.) In addition, the medical records reflect that rotator cuff surgery was recommended, but Plaintiff could not undergo the surgery at that time because he was traveling to Australia in order to take care of his sister, who had cancer. (AR 473-74.) Plaintiff explained at the administrative hearing that he planned to undergo the surgery and his brother was initially going to help him financially, but since he now had insurance he intended to proceed with the surgery. (AR 44.)

The only other articulated reason for discounting Plaintiff's symptom testimony was the lack of corroborating objective medical evidence. (AR 19.) Because the ALJ did not provide any other clear and convincing reason for discounting Plaintiff's complaints, this finding alone is not a proper basis for the ALJ's credibility determination. See Rollins, 261 F.3d at 856-57; Burch v.

Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (finding lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony).

Accordingly, the ALJ did not provide specific, clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective symptom testimony. In this instance, the Court cannot conclude that the ALJ's error was harmless. The ALJ's decision lacks any "meaningful explanation" based on specific evidence in the record for rejecting any specific subjective complaint. See, e.g., Brown-Hunter, 806 F.3d at 492 (ALJ's failure adequately to specify reasons for discrediting claimant testimony "will usually not be harmless"). In light of the significant functional limitations reflected in Plaintiff's subjective statements, the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the [Plaintiff's] testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).

## C. State Agency Determinations

Plaintiff also contends that the ALJ failed to consider the State agency determinations that Plaintiff was not capable of engaging in any of his past relevant work. (Jt. Sub. at 31.) Plaintiff's remaining claim, which challenges the ALJ's finding that Plaintiff could engage in his past relevant work at step four, is implicated by resolution of Disputed Issue Two. As such, the Court declines to determine the merits as it may be addressed appropriately by the ALJ as it arises upon further proceedings.

## D. Remand is Appropriate.

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is

appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled and award disability benefits. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, the Court concludes that remand to the Commissioner for further administrative proceedings is warranted. On remand, the ALJ shall reassess Plaintiff's subjective symptom complaints, reassess Plaintiff's RFC in light of the subjective symptom testimony, if warranted, and then proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing that exists in significant numbers in the national economy.

## IV.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: February 13, 2018

_____
JOHN D. EARLY
United States Magistrate Judge